UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NILS P. JOHNSON, JR., et al., | ) | CASE NO.  4:10cv1808 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | JUDGE SARA LIOI |
| | ) | |
| PETER ARMITAGE, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | [Resolving Doc. 8] |
| | ) | |

This matter comes before the Court on Plaintiffs' motion to remand the action to state court. (Doc. 8.) The motion is fully briefed and ripe for this Court's determination. For the reasons set forth herein, Plaintiffs' motion is GRANTED.

**I. Background**

Plaintiffs are Nils Johnson[1] ("Johnson"), a New Hampshire resident who operates a business in Ohio, and BioLogical, LLC ("BL"), an Ohio limited liability company with its principal place of business in Ohio and members who reside in Ohio, New Hampshire, Texas, South Carolina and Colorado. Plaintiffs have named several defendants in their complaint, whose residences are alleged as follows: Peter Armitage ("Armitage"), a citizen of Gibralter and resident of Texas; Mark Armitage ("Mark Armitage"), a citizen and resident of Gibralter; Alpha Energy ("AE"), a Delaware corporation with its principal place of business in Texas; John Byrnes ("Byrnes"), a resident of South Carolina; and James Willits ("Willits"), a resident of Texas.

---

[1] Another member of BL was Eric Johnson, who will be referred to herein as "Eric Johnson" to distinguish him from Plaintiff Johnson.

The Complaint alleges that Johnson met Byrnes at an oil and gas conference in 2004, the result of which meeting was the formation of a company called Kentucky Reserves ("KR"), LLC, formed to assemble oil and gas leases in Kentucky from which heavy oil and "tar sands" could be extracted. Byrnes brought Willits into the operation because he had a background in microbiology and had done research about the biological activity of microbes that could digest hydrocarbons and other organic compounds and render them innocuous. Byrnes intended that Willits would apply that research to facilitate extraction of the heavy oil. Willits's research also had applications in the field of environmental remediation and the application of chemicals to industrial sites polluted with organic compounds.

Given the broader range of applications for Willits's research, Johnson, Willits and Byrnes (as well as several individuals not parties to this action) formed BL as a vehicle for marketing the products developed by Willits. They designated Johnson the managing member. BL's operating office, from which the majority of managing operations were performed, is in Ohio. The members drew up an operating agreement for BL. They further agreed that Willits would receive a 20% interest in BL as well as $12,000 to equip a laboratory in Texas, his state of residence. Willits updated the members of BL regularly and indicated that he was making progress with his work, which he was documenting in notebooks.

After an unsuccessful attempt to partner with a larger energy company that had the capital to engage in operations to extract heavy oils from KR's Kentucky properties[2], Byrnes and Johnson attended a trade exposition in 2009 in Houston, Texas, at which they met Armitage. Byrnes, Willits and Armitage discussed the possibility of making Armitage a member of BL and KR. Johnson sold Armitage a portion of his KR holdings amounting to a 5% share, which

_____

[2] This effort resulted in the division of KR into KRII and KRIII. This is a detail that does not affect the discussion in this matter, nor does the Complaint indicate that the two new entities operated separately in any substantive way. Therefore, the Court will continue to refer to the Kentucky entities as KR.

Armitage's company, AE, acquired for $150,000. In exchange, Johnson and Armitage agreed that AE would provide engineering services for KR and both Armitage and AE would become active members of KR. Additionally, Armitage's son Mark Armitage bought a 5% share in KR from Johnson for another $150,000. These transactions were approved by members holding at least 75% of the shares of KR.

Johnson also accepted the suggestion of Willits and Byrnes to allow Armitage to become a member of BL, though with the caveats that all members would have to approve his membership and that he would have to sign confidentiality and non-compete agreements. The agreements included provisions that he would treat all information about BL's "research, techniques, products and proprietary knowledge" as confidential, and that he would "refrain, for a period of time, from engaging in business which compete[d]" with BL. (Doc. 1-2 at 27.) After Armitage had signed this agreement, BL member Eric Johnson refused to admit him as a member.

The Complaint asserts that, as a result, Armitage began to try to destroy BL and its interests, as well as the working relationship among Johnson, Byrnes and Willits. He encouraged Byrnes and Willits to undertake ventures that would be in direct competition with BL, and has "convert[ed] the intellectual property of BL." (Doc. 1-2 at 9.) Willits and Byrnes have since attempted to dissolve BL, and Willits has refused to do any further work for BL or to "provide [to Johnson] copies of his lab notes, the formulaes [sic] for BL products, [or] other indicia of the intellectual property of BL." *Id.* at 10. Further, Willits has retained the laboratory equipment purchased for his research with money from BL. Armitage and Mark Armitage have also alleged that the sales of BL and KR interests were unlawful, and have demanded repayment for those interests.

3

The Complaint alleges various breach of contract and tortious interference claims by each Plaintiff against various of the defendants. It also seeks declaratory judgment as to the rights of the parties with respect to the sale of shares to AE and Mark Armitage.[3] Defendants originally removed the action to this Court alleging diversity jurisdiction as their sole basis. According to Defendants, Johnson is actually a resident of New Hampshire, and BL is an LLC "whose principal place of business is in Ohio [and] who improperly claims residency in other states." (Doc. 1 at 2.) Shortly after the initial removal, Defendants filed an amended notice of removal asserting that Plaintiffs had made a claim under copyright law, which provided a basis for federal subject matter jurisdiction. Plaintiffs have moved to remand.

**II. Legal Standard**

When a defendant removes an action from state to federal court, it bears the burden of demonstrating that the federal court has jurisdiction of the action. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948-49 (6th Cir. 1994); *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). Likewise, a removing party bears the burden of establishing any claim of fraudulent joinder. *Alexander*, 13 F.3d at 949.

**III. Analysis**

Defendants had asserted in their notice of removal that BL improperly claimed residence in the states of its members and was instead an Ohio corporation, making it diverse from Defendants. They then filed an amended notice of removal (Doc. 6) in which they asserted that this Court had subject matter jurisdiction in that Plaintiff alleged claims having to do with Willits's intellectual property that was owned by BL. Such intellectual property, Defendants

---

[3] Defendants have alluded to an argument that the declaratory judgment claim against Mark Armitage and AE is unrelated to this action and is therefore improperly included in the Complaint. That issue is not before the Court on a motion to remand and the Court will not address it.

4

claimed, was subject to copyright law, and the complete preemption doctrine made any claims related thereto subject to federal question jurisdiction.

        In their memorandum in opposition to Plaintiffs' motion to remand, Defendants argued a third basis for federal jurisdiction. According to Defendants, Johnson had improperly included BL as a plaintiff in order to destroy diversity when, in reality, BL had been dissolved by agreement of members who held 50% of the voting interests, as required by BL's Operating Agreement ("Agreement").[4] In the time since BL's dissolution, Johnson, as the managing member, had simply refused to do what was necessary to wind up its affairs.

        Plaintiffs have challenged each of these arguments in their motion to remand and their reply. In addition, they have argued that Defendants failed to file their motion timely. The Court will first address the timeliness argument, and will then discuss each of Defendants' proposed bases of support for this Court's jurisdiction.[5]

### A. Timeliness

        In their motion to remand, Plaintiffs assert that Defendants did not file their amended notice of removal timely because they added new grounds for jurisdiction more than thirty days after the first defendant was served. Plaintiffs argue that, while a notice of removal may be amended to cure technical defects under 28 U.S.C. § 1653, it cannot be used to add additional bases for jurisdiction more than thirty days after service upon the first defendant.

        The Sixth Circuit has held that the thirty-day time limit for amending the notice of removal begins to run upon service of later-served defendants. *Brierly v. Alusuisse Flexible*

---

[4] The Agreement was attached as Exhibit A to Plaintiff's Complaint. (Doc. 1-2 at 14-22.) It appears that pages 3 and 5 of the Agreement are missing from that attachment, but this has not affected the Court's analysis, as all of the sections cited by the parties and relevant to their claims appear in the attachment.

[5] Additionally, Defendants make cursory assertions that nearly all of the counts of Plaintiffs' Complaint fail to meet the pleading standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiffs note that this is a removed case, and contend that the Complaint would have met the pleading standard under the Ohio Rules of Civil Procedure. The Court declines to address Defendants' assertions as Defendants have made no attempt to argue or support them.

*Packaging, Inc.*, 184 F.3d 527, 532-33 (6th Cir. 1999). A defendant may make substantive amendments to its notice of removal, including adding a claim subject to federal question jurisdiction, within that thirty-day window. *See LeFevers v. Wayne Disposal, Inc.*, No. 07-14922, 2008 WL 5188808 at *2 n.2 (E.D. Mich. Dec. 10, 2008) (holding that a petition for removal "may be amended freely within the statutory 30-day period" after service on the defendant, after which "it may be amended to set forth more specifically grounds for removal which were imperfectly stated in the original petition," but not to supply a "wholly missing allegation.")

Defendants' amended notice of removal added a basis for jurisdiction that was wholly missing from their original notice of removal, namely federal question jurisdiction based upon what Defendants characterized as Plaintiffs' copyright claims. They did so within the thirty-day window of service upon the last defendant served. Mark Armitage was served with Plaintiffs' Complaint on August 25, 2010.[6] Defendants amended their notice of removal on August 27, 2010, clearly within thirty days of service upon Mark Armitage. Defendants' amended notice was filed timely, and therefore Plaintiff's argument is without merit.

### B. Diversity Jurisdiction

In their original notice of removal, Defendants asserted that this Court had jurisdiction over Plaintiffs' claims because Plaintiff BL was actually diverse from all Defendants in that it is an Ohio corporation that improperly claimed citizenship in its members' states of residence. (Doc. 1 at 2.) In the amended notice of removal, Defendants further asserted that BL no longer existed as an LLC because the owners of 50% of its voting shares had voted to dissolve it, though Johnson had not yet wound up its affairs.

---

[6] The Court takes judicial notice of the docket for the state court proceedings in this matter in the Mahoning County Court of Common Pleas, *Johnson v. Armitage*, 2010 CV 2747. *See* FED. R. EVID. 201; *Granader v. Public Bank*, 417 F.2d 75, 82 (6th Cir. 1969).

"The general rule is that all unincorporated entities–of which a limited liability company is one–have the citizenship of each partner or member [ . . . ]. When diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company." *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-92 (1990) (additional citations omitted)); *see also VeriCorr Packaging, LLC, v. Osiris Innovations Group, LLC*, 501 F. Supp. 2d 989, 990-91 (E.D. Mich. 2007). As a consequence of this rule that an LLC assumes its members' citizenship, when an LLC participates in a suit as a party opposed to one or more of its members, diversity of citizenship is destroyed. *See Delay*, 585 F.3d 1003 at 1005.

So it is in the instant matter. Plaintiffs' representation in their Complaint is correct that, as an LLC, BL claims the residence of its members for purposes of determining diversity jurisdiction. On this basis, if BL is a proper party, diversity jurisdiction does not exist, because Defendants Willits and Byrnes, who on the one hand are defendants in this action, are also members of BL, which is a plaintiff. Defendants' argument regarding the citizenship of BL is without merit.

The question of whether BL is a proper party remains. According to Defendants, upon dissolution of BL by the vote of Willits, Byrnes and Horne, no further actions could be taken by BL even though Johnson had not yet wound up its affairs. Willits, Byrnes and Horne voted to dissolve BL on June 15, 2010, according to Defendants. (Doc. 9 at 10.) They then informed Johnson of their vote in writing. *Id.* Defendants assert that, as of the filing of their opposition to the motion to remand, Johnson had "failed to execute a statement of intent to dissolve" BL, and had not filed notification of the dissolution with the Secretary of State. *Id.*

Defendants cite the BL Agreement (Doc. 1-2 at 14-22) as setting forth the requirements for winding up the affairs of the LLC upon dissolution. The Agreement provides that "as soon as possible" following dissolution, the "appropriate representative of the Company shall execute a statement of intent to dissolve the Company" according to the requirements of the Ohio Secretary of State. (Doc. 1-2 at 20.) "Upon filing of the statement, the Company shall cease to carry on its business, except as is necessary to wind it up." *Id.* The Agreement then provides that "[t]he Managers/Members shall immediately proceed to wind up the affairs of the Company [ . . . ]." *Id.*

Defendants assert three bases for their contention that BL is not a proper party to this litigation. First, they argue that it cannot continue to operate as an entity after the dissolution vote. Second, they argue that Johnson cannot operate alone in bringing this action as a member of BL, even if BL does still exist. Third, Defendants cite the provision of the Agreement that prohibits a managing member from undertaking expenditures in excess of $10,000 without the approval of 51% of the other members. (Doc. 1-2 at 15.)

Defendants' assertions amount to a claim of fraudulent joinder, though this claim is different in form from usual fraudulent joinder claims. Ordinarily, "[f]raudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). Most commonly, defendants are joined in this manner in order to destroy diversity jurisdiction. In this instance, the non-removing party has allegedly joined as a plaintiff a party that does not have a cause of action against Defendants because it may not, in actuality, be in existence, and Defendants assert that this was done in order to deprive this Court of jurisdiction. Though this scenario is out of the

ordinary, the Court sees no reason not to apply the standards for fraudulent joinder to determine whether federal jurisdiction exists.

The burden of proving fraudulent joinder falls on the party that asserts complete diversity, in this case Defendants. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).

> To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court.

*Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citing *Alexander*, 13 F.3d at 949 (6th Cir. 1994)). When considering a claim of fraudulent joinder, the Court must resolve all questions of fact as well as all ambiguities in controlling state law in favor of the non-removing party. *Coyne*, 183 F.3d at 493.[7]

Revised Code § 1705.45 states that "[a] dissolved limited liability company continues its existence until the winding up of its affairs is completed." R.C. § 1705.45(A). The statute further provides that "[d]issolution of a limited liability company does not [ . . . ] [p]revent commencement of a proceeding by or against the company in its name." R.C. § 1705.45(B)(2). The statute contemplates the continuation of necessary transactions after the limited liability company has been dissolved and before its affairs are wound up.

In this instance, BL has been named as a plaintiff so that it may assert claims against Defendants for harm allegedly suffered by the company itself as a result of Defendants'

---

[7] "Remands based on a lack of subject matter jurisdiction are unreviewable even where the district court erred in its assessment of its jurisdiction." *Saginaw Housing Comm'n*, 576 F.3d at 624 (6th Cir. 2009) (citing *Volvo Corp. of Am. V. Schwarzer*, 429 U.S. 1331, 1333 (1976)); 28 U.S.C. § 1447. An exception to this rule is when a district court makes "a substantive decision on the merits of a collateral issue," which would include, for example, remand based on the interpretation of a forum selection clause. *Saginaw Housing Comm'n*, 576 F.3d at 624 (internal quotations and citations omitted).

actions. The statute contemplates the continued existence of BL to the extent that a member may pursue actions in its name, even after it has been dissolved. Defendants, however, ask the Court to consider whether the Agreement permits Johnson to pursue this particular action in light of the costs and alleged delay in winding up BL's affairs. These are considerations that are beyond the scope of remand, and would amount to a substantive determination of the rights and responsibilities of the parties under the Agreement. The Court declines to make such a determination at this juncture. Instead, it concludes that there is a colorable basis for predicting that BL could recover against Defendants in state court. The Court finds that BL was not improperly joined, and that its participation as a party in this matter destroys diversity jurisdiction.

### C. Federal Question Jurisdiction

While Plaintiffs make no reference to or apparent claim under the Copyright Act in their complaint, Defendants assert in their amended notice of removal that Plaintiffs' claims regarding Willits's intellectual property actually raise issues of copyright and are therefore governed by federal subject matter jurisdiction under the doctrine of complete preemption.

The Court finds that Plaintiffs have not raised any copyright claims. While they have made reference to intellectual property in Count Five of the Complaint, there is no claim of infringement or other invocation of copyright law. Instead, Plaintiffs have alleged that a contract with express terms exists among the parties, that intellectual property is part of the subject matter of that contract, and that Defendants are in breach. This is nothing more than a breach of contract claim, the resolution of which will involve analysis of both the terms of the contract and state law. There is no issue of copyright and no issue of preemption. Therefore this matter is not governed by federal law. To the extent that this is at all a close question, the Sixth Circuit has

10

held that "all doubts as to the propriety of removal are resolved in favor of remand." *Taco Bell Corp. v. Dairy Farmers of Am., Inc.*, 727 F.Supp.2d 604, 609 (W.D.Ky., 2010).

### D. Attorneys' Fees

Citing 28 U.S.C. § 1447(d), Plaintiffs contend that they are entitled to repayment of fees and expenses incurred as a result of the removal of this action. They argue that Defendants abandoned their original basis of removal by filing an amended notice of removal in clear acknowledgment that their original basis lacked merit. Defendants then asserted "an equally meritless basis" for removal when they attempted to argue that Plaintiffs' Complaint raised issues of copyright law. (Doc. 8 at 12.)

The Court finds that Defendants lacked a basis in law for removing this action. The United States Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under [28 U.S.C.] § 1447(c) only where the removing party lacked an *objectively reasonable* basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added). The statute leaves the question of attorneys' fees to a court's discretion and does not require a finding of bad faith. 28 U.S.C. § 1447.

Plaintiff is correct in noting that Defendants quickly modified their original basis for removal in favor of something that might have appeared more plausible. Defendants have asserted three different bases for removal at different stages of the removal process, even inserting one in their response to the motion to remand. Defendants' actions gave the appearance that they were "scrambling" to find a meritorious basis for removal. Indeed, none of the asserted bases has ultimately been found to have merit. Rather than award fees, however, the Court finds it sufficient simply to remand this matter to state court for further proceedings.

11

**IV. Conclusion**

        For the reasons set forth herein, the Court finds no basis for federal jurisdiction in this matter. Plaintiffs' motion to remand is GRANTED and their request for attorneys' fees is DENIED. The Clerk of Court is directed to remand this matter forthwith.

        **IT IS SO ORDERED**.

Dated: May 13, 2011

                          **HONORABLE SARA LIOI**
                          **UNITED STATES DISTRICT JUDGE**